IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARTINIQUE BURTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-00576 |
| | § | |
| UNIVERSITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Martinique Burton ("Plaintiff" or "Burton") files this Original Complaint against the University of Houston ("Defendant").

**SUMMARY**

1. Burton worked as an executive assistant in Defendant's legal department.

2. Due to complications stemming from her pregnancy, Burton was placed on leave from late February 2023 until the scheduled birth of her child in early April 2023. Thereafter, Burton began a period of job-protected continuous leave pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*.

3. On the morning of July 26, 2023, the day she returned from job-protected leave, Burton was terminated for pretextual reasons in violation of her FMLA rights and her Title VII rights.

**THE PARTIES AND JURISDICTION**

4. Plaintiff Martinique Burton is a natural person residing within the confines of the Southern District of Texas, Houston Division. Plaintiff has standing to file this lawsuit.

5. Defendant University of Houston is a taxpayer-supported public higher education institution located within the confines of the Southern District of Texas, Houston Division.

6. Defendant may be served with this Complaint through its President, Dr. Renu Khator, at 4302 University Drive, Suite 212, Houston, TX 77204.

7. The Court has personal jurisdiction over Defendant based on general jurisdiction.

8. The Court has subject matter jurisdiction over this case based on federal question jurisdiction under the Family and Medical Leave Act.

9. Venue is appropriate in the Southern District of Texas, Houston Division, because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district.

## FACTUAL BACKGROUND

10. Burton began her employment with Defendant in April 2022. She reported to Defendant's General Counsel, Dona Cornell ("Cornell"), in her capacity as Assistant to VC/VP/Legal Affairs/General Counsel.

11. Prior to working for Defendant, Burton spent many years working for public institutions in Texas.

12. In early August 2022, Burton informed Defendant that she was pregnant. Her due date was in April 2023.

13. In late August 2022, Burton asked to work from home because her child had contracted Covid-19. She was not permitted to do so, although others in the department were allowed to work remotely. Instead, she had to use sick time.

14. In September 2022, Burton experienced medical issues tied to her pregnancy and began throwing up as a result.

15. On September 27, 2022, Burton was admitted to the emergency room to seek treatment for a hemorrhage.

16. On September 29, 2022, Burton informed Cornell that she would be out until October 3, 2022.

17. Burton continued to experience complications from her pregnancy. She was again admitted to the hospital due to extreme pain from such complications in November 2022, January 2023, and February 2023.

18. At some point in November 2022, Cornell politely suggested that Burton should resign and seek employment elsewhere.

19. In February 2023, Burton was placed on bed rest due to complications stemming from her pregnancy.

20. After denying Burton's repeated requests for an accommodation to work from home, Defendant placed her on leave on or around February 22, 2023.

21. In addition to Burton, there were two other pregnant employees in the legal department during Burton's tenure with Defendant. One was Healthcare Counsel Allison Long ("Long"), and the other was Assistant General Counsel Kelly Hill Wilson ("Wilson").

22. Burton is Black. Long and Wilson are not.

23. Long was already pregnant when Defendant hired her. Long and Wilson were granted pregnancy-related accommodations that were denied to Burton. During her pregnancy, Wilson was frequently sick and Defendant allowed her to work from home for almost a month. After giving birth and returning to work, Wilson was also permitted to leave the office at around noon to bond with her newborn.

24. On February 24, 2023, Defendant approved Burton's request to withdraw 17 days from its Family Leave Pool. This covered the period from March 9, 2023 to April 3, 2023.

25. Concurrently, Defendant also approved Burton's Family Medical Leave request for parental leave. This covered the period from April 4, 2023 to June 26, 2023.

26. On April 1, 2023, Burton gave birth to her child.

27. Throughout her leave, Burton sent regular updates to Defendant, which clearly indicated her intention to return to work on June 26, 2023.

28. On April 10, 2023, shortly after the birth of her child, Burton sent Defendant one such reminder. Thereafter, Burton sent weekly emails to Defendant up until her return to work in June 2023. This pattern clearly expressed her firm intention to return to her job.

29. On June 15, 2023, Burton sent another check-in email to Defendant. She once again reiterated the fact that she would be returning to work on June 26, 2023.

30. On June 20, 2023, Terrilyn Batiste ("Batiste"), a benefits analyst in Defendant's human resources department, confirmed receipt of Burton's latest return-to-work notice. Batiste assured Burton that she was all set to return to work and would continue reporting to Cornell.

31. On Monday, June 26, 2023, Burton reported to work at her regularly scheduled time and quickly noticed an email sent on the previous Friday from Deputy General Counsel Jeffrey Palmer ("Palmer"). Palmer had requested a meeting with Burton at 9:00 a.m. that morning. Burton replied that she was already in the office and could meet with him at any time.

32. Shortly thereafter, Palmer stopped by Burton's office. He was accompanied by Vice President of Human Resources Gaston Reinoso.

33. Palmer cut right to the chase, informing Burton that she was being terminated.

34. The only explanation that Palmer provided was that Burton's employment with Defendant had not worked out.

35. In light of the vague explanation, the message that Burton received was that her employment had not worked out due to the time she missed during and after her pregnancy.

36. Palmer proceeded to coerce a letter of resignation from Burton despite the obvious fact that her departure from Defendant was anything but voluntary.

37. The next day, on June 27, 2023, Burton rescinded this coerced letter of resignation. She was not reinstated, as the "resignation" was never really a resignation.

38. At the time of her wrongful termination, Burton was on her first day back from job-protected FMLA leave.

39. In addition, Burton was treated objectively less favorably than similarly situated non-Black employees, including Long and Wilson, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

40. Burton has suffered and continues to suffer damages as a result of Defendant's flagrant violations of the FMLA and Title VII, and now brings this action to obtain redress for those violations.

**FMLA INTERFERENCE**

41. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

42. The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.*, was enacted "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(2). Congress enacted the FMLA in response to concern over "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." *Miller v. AT & T Corp*., 250 F.3d 820, 833 (4th Cir. 2001) (internal quotations omitted).

43. "The FMLA has two distinct sets of provisions, which together seek to meet the needs of families and employees and to accommodate the legitimate interests of employers." *Hunt*

*v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 763 (5th Cir. 2001) (citing *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir.1999); *Bocalbos v. Nat'l W. Life Ins. Co*., 162 F.3d 379, 383 (5th Cir.1998)).

44. The first set of provisions are prescriptive: they create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances and be restored to the same or virtually identical position when they return to work from leave. *Id*.

45. The second set of provisions are proscriptive: they bar employers from penalizing employees and other individuals for exercising their rights. *Id*.; see also 29 U.S.C. § 2615(a)(1)-(2); *Chaffin v. John H. Carter Co*., 179 F.3d 316, 319 (5th Cir. 1999); *Bocalbos*, 162 F.3d at 383 ("[T]he Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights.") (citations omitted); *Faris v. Williams WPC-I, Inc*., 332 F.3d 316, 320-22 (5th Cir. 2003) (holding that there is a distinction between substantive FMLA rights and causes of action for retaliation designed to protect those rights).

46. Defendant violated both the prescriptive and proscriptive provisions of the FMLA.

47. Under 29 U.S.C. § 2615(a)(1), an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the FMLA. *See Nero v. Industrial Molding Corp*., 167 F.3d 921, 927 (5th Cir. 1999). A Plaintiff "must at least show that [the employer] interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir. 2013).

48. "In order to state a prima facie case of interference under the FMLA, an employee must demonstrate only that she was entitled to a benefit that was denied." *Anderson v. New Orleans Jazz & Heritage Festival & Found., Inc.*, 464 F. Supp. 2d 562, 567 (E.D. La. 2006) (citing *Strickland v. Water Works & Sewer Board,* 239 F.3d 1199, 1206-07 (11th Cir. 2001) (citing

*O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1353-54 (11th Cir. 2000); *King v. Preferred Technical Group,* 166 F.3d 887, 891 (7th Cir.1999)).

49. The FMLA specifies that an employee returning from leave shall be restored to the position held by the employee when the leave commenced or to an equivalent position. 29 U.S.C. § 2614(a)(1). "An employee generally has the right to be reinstated to [her] previous position or an equivalent position upon [her] return from FMLA leave." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 306 (5th Cir. 2021) (citing 29 U.S.C. § 2614(a)(1)(A)-(B)). Defendant did not comply with this provision of the FMLA.

50. Defendant thus violated the FMLA's mandate that an employer not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the FMLA. 29 U.S.C. § 2615(a)(1); *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).

51. To state a prima facie FMLA interference claim, a plaintiff must demonstrate that (1) she was an eligible employee; (2) her employment was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her the benefits to which he was entitled under the FMLA. *Hester* at 306. Once the plaintiff states a prima facie claim, it is the employer's burden to a legitimate, non-discriminatory reason for the employment action at issue, which then may be rebutted by the plaintiff by raising an issue of material fact that the employer's proffered reason is pretextual. *Id.*

52. Here, all five elements are met. Plaintiff was an FMLA-eligible employee and Defendant was an FMLA-covered employer. Plaintiff was entitled to leave and commenced this leave. She was denied the full benefits of her leave. In addition, Defendant's proffered reason for terminating Plaintiff is pretextual. Therefore, Plaintiff makes a case of FMLA interference.

**FMLA RETALIATION**

53. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

54. To make out a prima facie case for FMLA retaliation, a plaintiff must show that: "(1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave." *Hunt*, 277 F.3d at 768 (internal citation omitted). After the plaintiff does so, the same burden-shifting scheme applies as does to the FMLA interference claim. *Hester* at 305.

55. The third element can be satisfied by showing that the plaintiff "was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because [s]he sought protection under the FMLA." *Mauder v. Metropolitan Transit Auth. of Harris County, Texas*, 446 F.3d 574, 583 (5th Cir. 2006) (quoting *Hunt*, 277 F.3d at 768).

56. A plaintiff need not prove that the exercise of FMLA rights was the sole cause of the unfavorable treatment; "[t]he plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated." *Mauder*, 446 F.3d at 583.

57. Temporal proximity alone can establish causal connection, the third element of an FMLA retaliation claim. *Id.*

58. There is certainly temporal proximity when Plaintiff was terminated on the first day back from FMLA leave.

59. Plaintiff suffered an adverse employment decision because of her FMLA leave and can make a case of FMLA retaliation.

**TITLE VII CLAIM OF RACE DISCRIMINATION**

60. Plaintiff incorporates the preceding paragraphs of this Complaint as if set forth verbatim.

61. Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

62. Discrimination can be established through direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

63. Where the plaintiff has not presented direct evidence of discrimination, courts apply the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the framework, to establish a prima facie case of race discrimination, a plaintiff must show that: "(1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the job that was held; (3) the plaintiff was discharged; and (4) after the employer discharged the plaintiff, the employer filled the position with a person who is not a member of a protected group." *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011) (quoting *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir. 1992)). Alternatively, in the case of disparate treatment, the plaintiff may satisfy the last element by showing that others similarly situated were treated more favorably. *See Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

64. After the plaintiff establishes a prima facie case, the burden shifts to the employer to show a legitimate, non-retaliatory reason for the adverse employment action. *Black*, 646 F.3d at 259; *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

65. The burden then shifts back to the plaintiff to show either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the

defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Black*, 646 F.3d at 259 (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (alteration in original).

66. All conditions precedent to this suit have been fulfilled.

67. Plaintiff makes a prima facie case of race discrimination. Plaintiff is a member of a protected group by virtue of her race; Plaintiff was qualified for the job that she held; Plaintiff was terminated; and Plaintiff was treated objectively worse when compared to Long and Wilson, both of whom were similarly situated non-Black pregnant employees in Defendant's legal department during Burton's tenure.

68. Plaintiffs who prevail in a Title VII discrimination claim are entitled to back pay. The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination." *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

69. Prevailing plaintiffs are also entitled to reinstatement as an equitable remedy. *See Julian v. City of Houston, Tex.*, 314 F.3d 721, 729 (5th Cir. 1992). If reinstatement is not feasible, front pay will be awarded in a manner consistent with the remedial purposes of the law. *See Brunnemann v. Terra Int'l Inc.*, 975 F.2d 175, 180 (5th Cir. 1992). Unlike back pay, front pay refers to future lost earnings. *See, e.g.*, *Jackson v. Host Intern., Inc.*, Nos. 09–51137, 10–50026, 2011 WL 2119644, at *8-9 (5th Cir. Feb. 1, 2011) (Fifth Circuit decision affirming front-pay award in a discrimination case); *Mota v. University of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 527 (5th Cir. 2001) (same).

70. Prevailing plaintiffs are entitled to compensatory and punitive damages under Title VII. *See* 42 U.S.C. § 1981A(a)(1).

71. Prevailing plaintiffs are also entitled to attorney's fees and costs and Plaintiff seeks to recoup these amounts.

**JURY DEMAND**

72. Plaintiff demands a jury trial.

**DAMAGES AND PRAYER**

Plaintiff asks that she be awarded a judgment against Defendant for the following incurred damages:

a. Actual damages in the amount of lost back pay, lost benefits, and other economic losses;

b. Reinstatement or front-pay;

c. Liquidated damages;

d. Compensatory damages;

e. Punitive damages;

f. Prejudgment and post-judgment interest;

g. Court costs;

h. Attorney's fees; and

i. All other relief to which Plaintiff is justly entitled.

Respectfully submitted,

/s/ Ahad Khan
Ahad Khan
Texas Bar No. 24092624
S.D. Texas ID No. 2981398
712 Main Street, Suite 900
Houston, TX 77002
(713) 401-3558 – Telephone
ak@ahadkhanlaw.com – Email

ATTORNEY FOR PLAINTIFF
MARTINIQUE BURTON